# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **COLONY INSURANCE COMPANY,** | 1:17-cv-00714-LJO-SKO |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS, GRANTING DEFENDANT'S MOTION TO STAY** |
| v. | |
| **VANTAGGIO FARMING CORPORATION,** | |
| **Defendants.** | (Doc. 9) |

## I. INTRODUCTION

On March 22 2017, Plaintiff Colony Insurance Company ("Plaintiff" or "Colony") filed an action for declaratory relief, pursuant to 28 U.S.C. § 2201, against Vantaggio Farming Corporation or Mulholland Citrus ("Defendant" or "Vantaggio"). Plaintiff seeks a judicial determination that no potential for insurance coverage exists for the claims asserted in the action pending in the Superior Court of California for the County of Fresno, titled *Afourer, Inc. v. Vantaggio Farming Corp., et al.*, No. 17CECG00046 ("State Court Action"). Complaint ("Compl."), Doc. 1.

Now before the Court is Defendant's motion to dismiss, or, in the alternative, stay Plaintiff's action for declaratory relief. Doc. 5. Colony filed its opposition (Doc. 6), and Vantaggio filed a reply, (Doc. 7). The Court took the matter under submission on the papers pursuant to Local Rule 230(g). Doc. 8. For the reasons discussed below, Vantaggio's motion to dismiss is DENIED but its motion to stay is GRANTED.

## II. BACKGROUND

This case involves an insurance coverage dispute between Vantaggio and Colony related to an underlying contract and tort dispute in state court.

**A.**   **Insurance Policy**

Colony issued an insurance policy to Vantaggio affording, in pertinent part, commercial general liability insurance for the period of May 20, 2016 to May 20, 2017 (the "Policy"). Compl. ¶ 14. In a section titled "Coverage A Bodily Injury and Property Damage Liability," under sub point 1 titled "insuring agreement," the Policy stated:

> A. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .
>
> B. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period; . . .

Compl. ¶ 16. The Policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Compl. ¶ 17. Property damage was defined as:

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or B. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Compl. ¶ 17.

**B.**   **Dispute Between Vantaggio and Afourer**

In December 2015, Vantaggio entered agreement with Afourer, Inc. ("Afourer") to sell them

banana squash. Afourer was in the business of breeding and selling a microwasp known to be effective in combatting California Red Scale, a pest that causes damage to citrus trees and fruit. Compl. ¶ 9-10. Afourer uses banana squash to breed Oleander Scale, which in turn hosts the microwasps. *Id.* Because Oleander Scale is particularly sensitive to pesticides, the parties agreed that Vantaggio would provide the banana squash free of pesticides. *Id.* ¶ 12.

On or about May and June, 2016, Vantaggio delivered approximately 124 bins of banana squash to Afourer per the parties' agreement. According to the complaint in the State Court Action, Afourer placed Oleander Scale on the banana squash in preparation for breeding the microwasps. However, all of the Oleander Scale died within approximately 25 days. Afourer alleges that the Oleander Scale died because the banana squash were contaminated with pesticides. As a result, Afourer was not able to produce the microwasp population needed to fulfill its many contracts and it suffered approximately $454,549.32 in damages.

Colony contends that Vantaggio conceded that it applied pesticides to the banana squash in its email correspondence.[1]

## C. State Court Action and Procedural History

On January 5, 2017, Afourer filed an action against Vantaggio in the Superior Court for the

---

[1] In its opposition brief, Colony asserts that a Vantaggio employee stated to an Afourer employee in an email dated July 5, 2016:
> I remember speaking with you when you presented me with this opportunity. You specifically warned me about Imaidacloprid [the pesticide]. I remember you telling me if we don't apply it at the flower stage, we will be fine. Our practice has always been to apply it well before flowering and was here as well. . .

Doc. 6 at 8.

Colony alleges that Vantaggio again stated in an August 4, 2016 email that it had applied pesticide to the squash:
> The facts of this matter are [Afourer] contacted Vantaggio to secure banana squash for the 2016 spring season. Vantaggio, using farms they control, agreed to plant the squash. [Afourer] advised Vantaggio not to apply Imidacloprid [the pesticide] at the flowering stage or beyond. Vantaggio ensured that Imidacloprid was not applied at or beyond the flower stage. . .

*Id.* at 8-9.

County of Fresno alleging causes of action for breach of contract, promise without intent to perform, breach of implied warranty of fitness, breach or express warranty, negligence, and negligent interference with economic relationship. Doc. 1-1. Colony is defending Vantaggio in the State Court Action, Doc. 6 at 5, but simultaneously brought suit in this Court seeking a judicial determination that no potential for insurance coverage exists for the claims asserted. Doc. 1.

### III. ANALYSIS

**A.     Motion to Dismiss, *Dizol* Factors**

Vantaggio urges the Court to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, not to hear this action, citing *Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998). The Declaratory Judgement Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995). The statute provides that a court *"may* declare the rights and other legal relations of any interested party seeking such declaration," *Id.* (quoting 28 U.S.C. § 2201(a) (emphasis in original case, not original statute). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right on the litigant." *Id.* at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241 (1952)). Thus, the Declaratory Judgment Act gives this Court "competence to make a declaration of rights; it [does] not impose a duty to do so." *Dizol*, 133 F.3d at 1223 (internal citations and quotation marks omitted).

In general, "[t]he district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* at 1225. However, "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id.*; *see also Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992) ("We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage.").

1  Here, Colony is not a party to the State Court Action, which concerns contract and tort disputes
2  and not issues of insurance coverage. There are no pending "parallel state proceedings involving the
3  same issues and parties." *Dizol*,133 F.3d at 1225. "The court's determination of the issues in this action
4  will thus be original, rather than repetitive, and will not result in a needless determination of state law
5  issues . . . or lead to duplicative litigation." *Travelers Indem. Co. v. KB Home N. Bay, Inc.*, No. CV 1:15-
6  481 WBS EFB, 2015 WL 5697362, at *4 (E.D. Cal. Sept. 28, 2015). Moreover, as explained below, the
7  Court is staying this action pending the outcome of the State Court Action, thus minimizing the risk of
8  duplicative litigation, inconsistent judgments, and forum shopping in this litigation.

9  The Court has subject matter jurisdiction over this action for declaratory relief, and the *Dizol*
10 factors do not weigh against exercising jurisdiction. Therefore, the Court DECLINES to dismiss this
11 action.

## B. <u>Motion to Dismiss, Rule 19</u>

13 Vantaggio claims that this case should be dismissed under Rule 19 of the Federal Rules of Civil
14 Procedure because Afourer is an indispensable party who cannot be joined without defeating diversity
15 jurisdiction. Rule 12(b)(7) allows dismissal of an action for failure to join a necessary and indispensable
16 party under Rule 19. The moving party bears the burden of persuasion in arguing for dismissal under
17 Rule 19. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

18 The Rule 19 analysis entails a two-step inquiry. First, the court must decide if the party is
19 "necessary" to the suit under Rule 19(a). Then, if the party is necessary but cannot be joined for
20 jurisdictional reasons, the court must determine whether the party is "indispensable" and, if so, whether
21 in equity and good conscience, the suit should be dismissed under Rule 19(b). *Id.* Rule 19 analysis is
22 "heavily influenced by the facts and circumstances of each case." *Bakia v. County of Los Angeles*, 687
23 F.2d 299, 301 (9th Cir. 1982); *see also Makah Indian Tribe*, 910 F.2d at 558 ("The inquiry is practical
24 and fact specific.") (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)).
25 To determine if the absent party is necessary to the suit under Rule 19(a), the court must

undertake a two-part analysis. First, the court must determine if in the absence of the party "complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1)(A). This analysis is independent of whether relief is available to the absent party. *Makah Indian Tribe*, 910 F.2d at 558. Second, the court must determine whether the absent party has a legally protected interest in the suit, and if:

> [the party] is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B). The interest must be more than a financial stake or speculation about a future event. *Makah*, 910 F.2d at 558 (citations omitted); *McLaughlin v. Int'l Ass'n of Machinists*, 847 F.2d 620, 621 (9th Cir. 1988)).

If a party is necessary to the suit, the court must determine whether it is also indispensable under Rule 19(b) in accordance by considering four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (a) protective provisions in the judgment; (b) shaping the relief; or (c) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The impairment to an absent party's interest may be minimized if the absent party is adequately represented in the suit. *Makah*, 910 F.2d at 558.

"The Ninth Circuit does not appear to have addressed the question of whether an injured third party is a necessary party to a declaratory judgment action between an insured and insured, and other courts disagree when applying Rule 19 in this context." *Navigators Insurance Co. v. K & O Contracting, LLC,* No.3:12–cv–01324–ST, 2013 WL 1194722, at *2 (D. Or. Jan. 10, 2013) (citations and quotation marks omitted), *report and recommendation adopted,* 2013 WL 1194715 (D. Or. Mar. 21, 2013). The majority of courts have held under Rule 19(a) that an injured party "generally is a necessary party in a

declaratory judgment action brought to determine the insurance coverage for the claim." *Greenberg v. Fireman's Fund Ins. Co.*, No. CV-07-1554-PHX-DGC, 2007 WL 4105990, at *2 (D. Ariz. Nov. 16, 2007) (collecting cases and concluding that the injured party is necessary); *see also Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 n.5 (3d Cir. 1986) ("[I]n a declaratory judgment proceeding involving an [insurance] policy, an injured person is a 'necessary and proper' party.") (citation omitted); *U.S. Fire Ins. Co. v. The Milton Co.*, 938 F. Supp. 56, 57 (D.D.C. 1996) ("It is clear that an injured party is a *necessary* party in a declaratory judgment action brought to test the coverage of an insurance policy.") (emphasis in original); *U.S. Fidelity & Guar. Co. v. Ditoro*, 206 F. Supp. 528, 532-33 (M.D. Pa. 1962) (the injured party is "a necessary and proper party because the injured party has a material interest in the outcome of the suit"); *Georgia–Pacific Corp. v. Sentry Select Ins. Co.*, No. 05–CV–826–DRH, 2006 WL 1525678, at *8 (S.D. Ill. May 26, 2006) ("[W]hen dealing with an issue of insurance coverage, the underlying claimants are necessary parties, whether the declaratory judgment action is filed by the insured or the insurer."). However, other courts have concluded that the insured adequately protects the interests of the uninjured party. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F3d 216, 230 (3rd Cir2005); *CFI Wisconsin, Inc. v. Hartford Fire Ins. Co.*, 230 F.R.D. 552, 554 (W.D. Wis. 2005); *Ace Am. Ins. Co. v. Paradise Divers, Inc.*, 216 F.R.D. 537, 540 (S.D. Fla. 2003). Some courts have rejected the notion that any protectable interest exists before the third-party obtains a judgment against the insured. *E.g.*, *Black Diamond Girl Scout Council, Inc. v. St. Paul Fire & Marine Ins. Co.*, 621 F. Supp. 96, 97-98 (S.D. W. Va. 1985).

  The Court is persuaded by the reasoning in *Greenwich Ins. Co. v. Rodgers*. In *Rodgers*, the Court granted the motion to compel joinder of an injured party concluding that, "an injured party asserting claims against an insured has an interest relating to the subject of the declaratory judgment action between the insurer and insured." 729 F. Supp. 2d 1158, 1165 (C.D. Cal. 2010). Here, proceeding without Afourer risks duplicative litigation and inconsistent obligations. If Afourer succeeds in the State Court Action, it may be able to sue Colony directly as a judgment creditor under California law. *Id.*

(citing Cal. Ins. Code § 11580(b)(2)). If Afourer is not joined as a party to this litigation, Colony would not necessarily be bound by the outcome of this Court's determination of coverage liability. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("*Res judicata* applies when there is: (1) identity of claims; (2) a final judgment on the merits; and (3) *identity or privity between parties.*") (emphasis added). Joining Afourer as a party therefore minimizes the risk of inconsistent and duplicative judgments regarding coverage. *Rodgers*, 729 F. Supp. 2d at 1165.

Having determined that Afourer is a necessary party, the Court is required to join it as a party if it is feasible. Vantaggio contends that joining Afourer is not feasible, because adding them as a nominal plaintiff along with Colony would destroy diversity, and thus eliminate the Court's subject matter jurisdiction over the case. However, this proposed alignment is incorrect. District courts generally have the duty to "look beyond the pleadings" and align the parties "according to their sides in the dispute" before "a decision [can] be made as to whether complete diversity exists." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941); *accord Smith v. Sperling*, 354 U.S. 91, 96 (1957). "The normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party." *See Home Ins. Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998); *see also City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1314 (11th Cir. 2012) (same).

Here, Afourer's interests align most closely with the defendant, Vantaggio. Both parties have an interest in Colony providing insurance coverage. Afourer and Vantaggio – both California corporations – would both be on the opposite side of the "v" from Colony – a Virginia corporation. Therefore, Afourer can be joined as a party defendant to this suit without destroying diversity jurisdiction. The Court ORDERS that Afourer is joined as a necessary party, specifically as a defendant,under Rule 19(a). Vantaggio's motion to dismiss the Complaint pursuant to Rule 19 is DENIED.

**C.**     **Motion to Stay**

Under California law, when an insurer seeks a declaratory judgment under an insurance policy and there is an underlying third-party action against the insureds, a stay of the declaratory judgment

action pending resolution of the underlying third-party suit is appropriate "when the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v. Super. Ct. ("Montrose I")*, 6 Cal. 4th 287, 302 (1993). Granting a stay in such cases serves to "eliminate the risk of inconsistent factual determinations that could prejudice the insured." *Id.* Such factual inconsistencies may arise "because the [insurer's] duty to defend frequently turns on coverage, and . . . coverage frequently turns on factual issues to be litigated in the third party liability action." *Montrose I*, 6 Cal. 4th at 306. Federal courts in California have followed the *Montrose* rule. *OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel*, No. 1:09-CV-00257-AWI-GSA , 2009 WL 2914203, *4 (E.D. Cal. Sept. 9, 2009) (citing *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979 (9th Cir. 2002)); *Conestega Servs. Corp. v. Exec. Risk. Indem.*, 312 F.3d 976 (9th Cir. 2002)); *see also State Farm Fire & Cas. Co. v. B. T. B., Inc.*, No. CV-F-10-1990-LJO-DLB, 2011 WL 284974, *5 (E. D. Cal. Jan, 26, 2011).

Courts have noted three major concerns surrounding the trial of coverage issues which necessarily turn upon the facts to be litigated in the underlying action. First, the insurer, who is supposed to be defending the insured and with whom the insured has a special relationship, is effectively attacking its insured and thus aiding the claimant in the underlying suit. *Haskel, Inc. v. Super. Ct.*, 33 Cal. App. 4th 963, 979 (1995) (citing *Montrose Chem. Corp. v. Super. Ct. ("Montrose II")*, 25 Cal. App. 4th 902, 910 (1994)). Second, litigating the coverage dispute while the underlying action is still pending requires the insured to "fight a two front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions." *Haskel, Inc.*, 33 Cal. App. 4th at 979 (citing *Montrose II*, 25 Cal. App. 4th at 910). Third, "there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former." *Id.* (citing *Montrose II*, 25 Cal. App. 4th at 910).

"It is <u>only</u> when there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage

does not exist." *Montrose II*, 25 Cal. App. 4th at 910 (emphasis added). When such a potential conflict exists, a district court should enter a stay. "By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying judgment, the declaratory relief action may properly proceed to judgment." *Montrose I*, 6 Cal. 4th at 302.

### 1. "Occurrence" or "Accident" under California Law

Colony asserts Vantaggio's conduct at issue in the underlying litigation does not qualify as an "occurrence" triggering coverage under the Policy because the undisputed facts show that Vantaggio's conduct was intentional. Doc. 6 at 15:7-11. Therefore, Colony argues, the outcome of the State Court Action has no bearing on the question of coverage being litigated in this action.

The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Compl. ¶¶ 16, 17. "In the context of liability insurance, an accident is 'an unexpected, unforeseen or undersigned happening or consequence from either a known or unknown cause.'" *Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal. 4th 302, 308 (2009) (citing *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal. 2d 558, 564-564 (1959)) (internal citations omitted).

In general, the term "accident" does not refer to the unintended consequences of intentional conduct. *State Farm General Ins. Co. v. Frake ("Frake")*, 197 Cal. App. 4th 568, 571 (2011). In *Delgado*, the insured, Craig Reid, hit and kicked a 17-year old Jonathan Delgado. *Id.* at 306. Delgado's complaint asserted that Reid, without provocation, "negligently and unreasonably believed he was engaging in self-defense." *Id*. The court held that such conduct, even if committed in self-defense, is not an "accident" and the resulting consequences are not covered under his liability insurance. *Id.* at 309. Moreover, "an injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor." *Delgado*, 47 Cal. 4th at 311-12.

Some appeals court decisions in California have held that an intentional act automatically

10

disqualifies an insured from claiming "accident" coverage.[2] *Albert v. Mid-Century Insurance Co.*, 236 Cal. App. 4th 1281, 1291 (2015); *Frake*, 197 Cal. App. 4th at 571. *Albert*, extending *Delgado*, states that "[t]he insured's subjective intent [is] irrelevant." *Id.* at 1291. In *Albert*, the insured claimed her act of pruning olive trees, which were not owned by her or on her land, qualified as an accident because she believed the trees were owned by her and on her land. *Id.* at 1286. However, the court found that even though she had no intention to cause "harm" to her neighbor's property, she did intend the harmful act, the pruning of the trees. *Id.* at 1291. Therefore, the insured's conduct that caused unintended harm to her neighbor did not qualify as an accident.

Likewise, in *Frake*, an insured's intentional conduct causing unintended harm did not qualify as an "accident." *Frake*, 197 Cal. App. 4th at 568. In *Frake*, the insured struck his friend in the groin while the two were engaged in horseplay. *Id.* at 572. The injured party sued the insured, who tendered his defense to the insurer under a liability provision of a renter's policy. *Id.* The court held that the insurer had no duty to defend because the insured engaged in an intentional act. *Id.* at 585. The court found that it was not an "accident" that the insured's intentional act, a particularly forceful incident of horseplay, caused the unintended long-term harm. *Id.*

However, coverage is not always precluded when the insured's intentional acts result in injury or damage. *Frake*, 197 Cal. App. 4th at 580. An accident may exist "when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity*." Merced Mutual Ins. Co. v. Mendez* ("*Mendez*"), 213 Cal. App. 3d 41, 50 (1989); *see also Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.*, No. 1:10-cv-2051-AW-MJS, 2013 WL 5519605, at *1 (E.D. Cal.

---

[2] The California Supreme Court has agreed to answer the following question certified to the court by the Ninth Circuit in *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., Inc.*, 834 F.3d 998 (9th Cir. 2016), *certification request granted*, S236765 (Cal. Oct. 16, 2016): "Does an employer's negligent hiring, retention, and supervision of an employee who intentionally injures a third party qualify as an 'occurrence' under the employer's commercial general liability insurance policy?" It is expected that the Court will provide guidance on whether the state's lower courts have construed the term "accident" in liability policies properly. *See* John K. DiMugno, *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Company, Incorporated: A Solution to the Cal. "Accident" Conundrum?*, 29 No. 2 Cal. Ins. L. & Reg. Rep. NL 1 (2017).

Oct. 3, 2013) ("*Delgado* did not purport to abrogate the portion of *Mendez* . . . holding an accident exists where some *independent and unanticipated event in the causal chain occurred to help create the injury*") (emphasis added).

In *Britz,* a pest control advisor employed by agricultural chemical consultant, Britz, advised a farmer to apply a variety of pesticides, fertilizers, and agricultural chemicals to all of his crops. *Id.* at *2. The farmer then suffered damage to his crops. The insurance company asserted that it was entitled to summary judgment on the question of coverage liability because the damage to the crops was solely and proximately caused by the intentional misconduct of Britz's employee. *Id.* at *34. The court denied summary judgment on this issue of coverage after concluding that there were factual disputes as to whether the insured's intentional conduct causing unintended harm qualified as an "accident," noting that the damage "may have resulted from a myriad of other causative factors independent of [the allegedly intentional conduct]." *Britz*, 2013 WL 5519605, at *35-36.

Here, Colony asserts that Vantaggio took intentional action in applying pesticides to the banana squash. Doc. 6 at 15:7-9. Therefore, it concludes, the resulting harm was not an accident triggering an occurrence under the Policy. Doc. 6 at 15:7-11. Even accepting Colony's version of the facts as true, it remains to be seen whether any "independent and unanticipated event[s] in the causal chain[s]," were the proximate cause of the damage. *See generally* Doc. 5-1; Doc. 6. If they were, it is possible that even Vantaggio's intentional act could still qualify as an occurrence triggering coverage under *Mendez* and its progeny. *Britz*, 2013 WL 5519605, at *35-36. Those facts may (or may not) come to light in the course of the State Court Action.

Moreover, unlike in *Frake* where the insured was engaging in already harmful conduct that resulted in an unexpected more severe harm, here, the insurer alleges that Afourer had knowledge and agreed to the insured's general practice of applying pesticides pre-flowering. Doc. 6 at 4:16-19; 5:2-3 ("if we don't apply [the pesticide] at the flower stage, we will be fine. [The insured's] practice has always been to apply it well before flowering and was here as well . . ."). These allegations set forth by

12

Colony raise the possibility that "independent and unanticipated events in the causal chain" caused the eventual harm. *Britz*, 2013 WL 5519605, at *1. If the underlying litigation found that there was an unanticipated intervening cause for the presence of pesticides in the banana squash, then the insured conduct could qualify as an accident triggering coverage under California law. This ambiguity shows that the coverage question could turn on facts to be litigated in the underlying action.

### 2. **Application of Motion to Stay Standard**

As the discussion above makes clear, there are significant unresolved factual issues in the underlying suit that may implicate the question of coverage liability, even accepting Colony's version of the facts. *Montrose I*, 6 Cal. 4th at 287. Moreover, in its opposition, Colony offers minimal and unsubstantiated facts regarding the alleged application of pesticide to support their version of events. Colony only presents the Court with excerpts from two emails, purportedly sent by Vantaggio, that allude to the fact that the parties agreed that Vantaggio could apply pesticide to banana squash at the pre-flowering stage. Doc. 6 at 8:16-19, 8-9:24-3. This evidence is insufficient to establish conclusively how the pesticide came to be on the banana squash.

The Court is also left to speculate as to any possible intervening causes. Notably, the Court lacks any detail from the time of alleged application of pesticide pre-flowering, to the death of all of the Oleander Scale, Compl. ¶ 11, and finally to the time the banana squash were tested above "pesticide-free levels," Compl. ¶ 12. These gaps suggest that the "coverage question [may] turn[] on facts to be litigated in the underlying action." *Montrose I,* 6 Cal. 4th at 247.

The facts necessary to the determination of the contract dispute in the State Court Action may overlap with the facts necessary to the determination of insurance coverage here. These facts may clarify the events surrounding the causal chain that eventually led to the accident. For example, the harm could have been caused by the negligent handling and application of pesticides by growers, incorrect timing in the application of pesticides, field oversight issues, or accidental excessive application of pesticides. *Britz*, 2013 WL 5519605, at *35-36. Any of these intervening causes might constitute an "occurrence"

13

triggering Colony's obligation to provide coverage under the Policy.

The potential issues that could arise if this case were to proceed while the underlying litigation is ongoing mirror the court's concerns in *Montrose II*. Colony is arguing that the pesticides were applied intentionally, thus potentially aiding Afourer in the underlying suit. Moreover, if this case were to proceed while the State Court Action is ongoing, Vantaggio would be forced to "fight a two front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions." *Haskel, Inc.*, 33 Cal. App. 4th at 979 (citing *Montrose II*, 25 Cal. App. 4th at 910).

Because the factual issues in this case overlap with those being litigated in the State Court Action, Defendant's motion to stay proceedings is GRANTED.

## IV. **CONCLUSION AND ORDER**

For the reasons discussed above, the Court DENIES Defendant Vantaggio's motion to dismiss the Complaint for failure to join a necessary party under Rule 19, but ORDERS Afourer to be added as a necessary party. The Court GRANTS Defendant Vantaggio's motion to stay these proceedings.

IT IS SO ORDERED.

Dated: **August 14, 2017**        **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE